## HEWLETT *v.* WESTERN UNION TEL. CO.

*(Circuit Court W. D. Tennessee.* July 1, 1886.)

1. TELEGRAPH COMPANIES—REASONABLE REGULATIONS—POWER TO MAKE.

     A corporation has the power and discretion to determine for itself what is best for all concerned, and a choice of its own regulation; so that the test of reasonableness is not whether some other rule would answer its purpose as well or better, but whether that adopted is fairly and generally beneficial to the company, and all its customers.[1]

2. SAME—TRANSIENT SENDER OF MESSAGE—DEPOSIT TO PREPAY ANSWER—WESTERN UNION'S RULE 12.

     A rule of the defendant company requiring that a transient person sending a message calling for an answer shall deposit in advance an amount sufficient to pay for a reply of 10 words is not unreasonable, in view of its rule 12 regulating the entire system of collecting the tolls for telegraphic service, whereby the company seeks to afford the public the largest latitude consistent with its own security in adjusting among themselves the burden of payment for the messages; but a reasonable regulation must be reasonably applied, and the company should make allowance to accommodate special cases of exception or exemption from the rule.

3. SAME—MEASURE OF DAMAGES.

     Although this case does not present any claim for such exemption, and the application of the rule was reasonable, the court suggests that the measure of damages may not be, as was argued, the same as in cases of messages taken, but not sent, or defectively sent, on the ground that the public has the right to the enjoyment of reasonable regulations to secure to it the benefit of the telegraphic service, to be enforced by the imposition of damages for keeping up an unconscionable regulation, or for an unreasonable application of one that is generally unobjectionable.

Action for Damages. This case, by stipulation, was tried before the court without a jury. The facts are stated in the opinion.

[1] See note at end of case.

*Thos. H. Jackson,* for plaintiff.

*J. W. Bonner* and *L. W. Humes,* for defendant.

HAMMOND, J. The plaintiff, being transiently in the city of Memphis, sent from his hotel to the defendant company's office, with sufficient money to pay for it, the following message, to be transmitted by telegraph:

"1 P. M., GASTON'S, MEMPHIS, December 16, 1881.

"*To R. O. Bean, Leighton, Ala.:* Will leave to-night. Will you wait for me?           T. G. HEWLETT."

The errand boy was told by the company's clerk that it would not be received without an additional sum of money to pay for the answer, and, not having that, he returned to the hotel, and the message was never sent, the plaintiff not having been informed of defendant's refusal to take it until it was too late to take the train. He sues for damages, and proves that he and one Bean were engaged in a joint enterprise to capture a fugitive from justice, for whose arrest there was a reward to be had of $1,600, which Bean received, and refused to share with plaintiff because he did not come to help. His failure to go he attributed to his failure to receive an answer to his message, and he claims compensation, to the extent of his share of the reward, from the defendant, for its refusal to transmit it.

The company justifies under its regulations on that subject, which it insists are reasonable. They are as follows:

"(11) All messages, except answers, or covered by franks, must be prepaid, unless guarantied by responsible parties. *Messages on the business of the party sending, and answers to collect messages, must invariably be prepaid.* Messages addressed to hotels, or to parties absent from home, must be prepaid in all cases, *unless they are answers to messages marked 'answer prepaid.'*

"(12) Transient persons sending messages which require answers must deposit in advance an amount sufficient to pay for a reply of 10 words. In such cases the signal '33' will be sent with the message, signifying that the answer is prepaid."

The only case cited by counsel, and they say that it is the only one directly in point as to the reasonableness of these rules in their relation to the deposit of money to pay for the expected answer by transient persons, is that of *W. U. Tel. Co.* v. *McGuire,* 104 Ind. 130, S. C. 2 N. E. Rep. 201, where it was held to be reasonable, and I am of the same opinion. I am not entirely satisfied wfth the grounds of that judgment; for it seems to me to place the ruling too entirely upon a mere question of etiquette between the parties to the correspondence. The court says:

"A person who sends another a message, and asks an answer, promises, by fair and just implication, to pay for transmitting the answer. It is fairly inferable that the sender who asks an answer to his message will not impose upon the person from whom he requests the answer the burden of paying the

expense of its transmission. The telegraph company has a right to proceed upon this natural inference, and to take reasonable measures for securing legal compensation for its services."

This may be true, if we assume that the subject-matter of the message concerns the business of the sender, and that only, and not at all the business of the addressee. Then it would be the rule of social etiquette, of course, as it is if one writes a letter strictly on his own business to inclose a postage stamp for the reply. But there is great force in the argument of plaintiff's counsel that it is none of the telegraph company's business to enforce rules of social courtesy like that; and since it cannot know whether there will be any reply, or whether, if there be, the circumstances may not be such that the sender of the answer should himself pay for it, and be anxious and willing to do so, the company should not refuse to send the original message, if it be paid for. He likened it to a regulation of a carrier of passengers refusing to transport a passenger at regular rates, unless he should buy a return ticket. And I take it that in an equal number of cases the relation of the parties may be such that the sender might reasonably expect and demand, notwithstanding the social rule of courtesy above referred to, that his correspondent should pay for the answer, and that in an equal number of cases he does do so. In many other cases, when the original message is solely about his own business, the sender may reasonably hope and expect the answer to be paid for by the other party. Again, often a transient person in distress, and with reduced funds, might wish to rely on the other party to pay for the answer; and since the company may protect itself by refusing to take the answer without prepayment by its sender, it would seem an unreasonable hardship, under those circumstances, to demand that he pay for both messages in advance. Or he might wish to go away to receive the answer, or to receive it over another line, or at another place, etc.; and so, under many imaginable circumstances, be reasonably exempt from the burden of depositing money in advance for a message he may never receive, and find it inconvenient and expensive to get back his deposit. Hence, take it altogether, I should not support the reasonableness of this regulation wholly on the ground of the sender's obligation to pay for the answer. He may very often be not so obliged, and that is an answer to it.

But I think this regulation is a reasonable one, notwithstanding the force of the plaintiff's attack on this Indiana case. It should not be segregated from the other regulations of the company on the subject of collecting the tolls, and tested by itself alone, on the reasoning of plaintiff's argument, as above set forth. This is only one regulation of a carefully devised system for securing payment of tolls, consistently with enlarged accommodation of the public in allowing the customers of defendant to regulate among themselves this very matter of adjusting the burden of these tolls. I have quoted in the

statement of facts the entire regulations on the subject, as I find them printed, italics and all, and an analysis of them shows that the company is endeavoring to accommodate the public as much as possible in this matter. It might reasonably, as the railroads do as to passenger fares, demand prepayment by the sender of all messages, whether they be originals or answers. But it does not do this. It allows answers to be sent at the expense of the person whose message is answered, and this is a privilege and a benefit it seeks to confer on the original sender by undertaking to collect of him that toll instead of requiring his correspondent to pay it, thereby lessening the chances of his answering at all. It requires all original messages to be prepaid or guarantied. If guarantied, the company will allow the sender, if he choose, to place the burden of the toll on the addressee,—by itself undertaking to collect the toll of him in the first instance, but of the sender at last, if the other refuses to pay. It seeks, as to answers, to accommodate the public in the same way, by undertaking to collect of the person addressed; and, as I understand the regulations, the sender of the answer is not expected to pay at all, certainly not to *prepay*, unless it be an answer to a message which has been sent to be collected from himself, or is sent to parties away from home, or addressed to hotels; and in these last-mentioned cases he need not prepay if it be an answer to a message marked "answer prepaid." In order to give them, their correspondents, and all persons who are interested in the use of the telegraph, the benefit of this system of collecting and adjusting tolls, the requirement is made that transient persons shall pay for the expected answers in advance, and it is not unreasonable, as a part of that system. It may be that a more liberal rule might be devised for transient persons, and that this one operates sometimes harshly and inconveniently; but that is not the question. In view of the whole system, a court cannot say that the power and discretion of the company to determine for itself what is best for all concerned has been unreasonably exercised. It has a choice of its own regulations, and the test of reasonableness is not whether some other would answer its purposes as well or better, but whether this is fairly and generally beneficial to the company, and all its customers.

Now, I have said elsewhere that reasonable regulations of public corporations like these must be reasonably applied, and that a rule which is generally fair may, under especial circumstances, become oppressive and unreasonable, as applied in the particular case; and so these corporations must exercise ordinarily prudent discretion in relaxing their regulations in such cases. If, to use an illustration of the argument, a tramp, with just money enough to pay for his message, should so inform the company, and ask to have it transmitted, and take pay for the answer from its own sender, and this should be refused, it may be that the company would be liable; but I should think that, under these regulations, there would be in such case no

refusal, and that almost any intelligent operator, when so informed, would take the message. No such a case is shown here. The plaintiff was neglectful in not looking after his message sooner than he did, and he was not a tramp, or destitute of funds to deposit for the answer.

I do not say that if the company were otherwise liable this would have been contributory negligence on his part, for that point is not now for decision, but only that the plaintiff does not prove any circumstances to take his case out of the general reasonableness of the rule in its application to him. This view renders it altogether unnecessary to consider the question, so thoroughly argued on both sides, as to the measure of damages in cases like this. But I may be permitted to say that possibly the cases so abundantly cited concerning a neglect to send accepted messages, or the sending of them defectively, may not apply to a case where the company wrongfully refuses to take the message at all, because of an unreasonable regulation. It is ingenious to say that a plaintiff in such a case is no worse off than one whose message is taken, and not sent, but it may not be sound; because all corporations in the public service may be compelled by actions of this kind, and by substantial damages, to keep reasonable regulations, and to reasonably administer them in all cases; and a failure in that regard may not be alike in cause of action, or in the matter of damages, as a neglect to send an accepted message. It may be useful to this company to call attention to this possible distinction in the measure of damages.

Judgment for defendant.

### NOTE.

A telegraph company has a right to make reasonable regulations for the transaction of its business. W. U. Tel. Co. v. Harding, (Ind.) 3 N. E. Rep. 172.

It is laid down as a general principle by Gray, in his Treatise on Communication by Telegraph, § 13, that, apart from its right to make by-laws for its internal management, a telegraph company is entitled to make reasonable regulations, subject to which only the duty of services arises. The reasonableness of these regulations is a question for the court to determine.

The reasonable rules and regulations of a telegraph company, made for the purpose of governing its business, to be available as a defense, must be specially pleaded. W. U. Tel. Co. v. Scircle, (Ind.) 2 N. E. Rep. 604.