This is an appeal from the judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission. The city of St. Louis, by complaint to the commission, challenged the right of the Southwestern Bell Telephone Company to collect a charge of twenty-five cents per month each for equipping with dials telephones attached to private branch exchanges (called in the record P.B.X.) in St. Louis. This rate had been filed with and approved by the commission on March 1, 1926, and was part of the telephone company's lawfully established tariff when the complaint herein was filed.
After a hearing the commission dismissed the complaint, holding the charge to be reasonable and lawful, which order was, on certiorari for review, affirmed by the circuit court.
P.B.X. service is telephone service rendered to large users in which a number of lines connect the company's central office with a switchboard on the subscriber's premises, to which switchboard telephone instruments on the premises (called stations) are connected by lines radiating from the switchboard so that any such station may be connected by the P.B.X. operator with any other such station without having the call handled by the company's central office. This class of service is called a private branch exchange, since, as stated by respondents, it is "a complete telephone exchange, a branch from the main system and privately operated." In addition, each station connected with a P.B.X. switchboard may be connected by the P.B.X. operator with the company's central office so as to permit communication with the company's other subscribers. Respondent company claims and its evidence tended *Page 321 
to show that "two classes of service are, therefore, included in the P.B.X. service: (1) intercommunicating service on the subscriber's premises; (2) communication from the subscriber's premises to the outside."
The company's telephone service in St. Louis is being converted from the former manually operated switchboard system to the dial or "automatic" system, in which the person using a telephone equipped with a dial makes his call by means of the dial mechanism without the aid or intervention of a switchboard operator at the company's central office. The change from the old to the new system has not been completed throughout the city, but has been made in certain districts, in one of which is complainant's City Hall. In that building complainant uses P.B.X. service. Upon changing from the old to the new system the company furnishes dialed telephone instruments to individual line subscribers without any additional charge and also, without extra charge, equips with dials the local switchboards of P.B.X. subscribers. The charge in controversy is for equipping and maintaining with dials individual telephones on the subscriber's premises connected with the P.B.X. switchboard. Under the manual system the user of a telephone attached to a P.B.X. switchboard could either give the local operator the number he wished and have her complete the call, or he could ask for "outside," whereupon the local operator would connect the line with the company's central office, where the call would be completed. The latter procedure saved some time to the P.B.X. switchboard operator. It was shown that while the use of P.B.X. service in that respect was not uniform, such use had become quite extensive. Under the automatic or dial system the user of a P.B.X. telephone, unless it is equipped with a dial, must have the local switchboard operator dial for him from her switchboard. If he has a dial telephone he can make his own call from his telephone or station. Under the manual system if the P.B.X. switchboard was unattended, as at night where local operators were kept only during the day, a line could be left "plugged through" to the company's central office so that the individual station could make a call as on an individual line. Under the automatic system a line can be similarly left "plugged through," but in order that a call may be made from the individual telephone thus left connected that telephone must have a dial.
In so far as it had been the practice of users of P.B.X. service for individuals to call for "outside" service while the local operator was on duty, or to have a line left plugged through when she was off duty, it is conceded that in order to get the same service under the automatic system as had been enjoyed under the manual system, the individual P.B.X. telephones as well as the switchboards must be equipped with dials. *Page 322 
Complainant's evidence tended to show that the automatic system on the whole gave somewhat slower service than the manual. The company's evidence was to the contrary. While we do not deem that issue material to the question here involved, it may be stated that in our opinion the preponderance of the evidence did not sustain complainant's contention.
By respondent telephone company's evidence the following furthers facts were shown:
The facilities furnished by the company to P.B.X. subscribers very widely, requiring different-sized private switchboards, different numbers of lines connecting such boards with the central office and different numbers of telephone instruments on the private premises, for which reasons the rate for P.B.X. service varies according to the facilities required. There can be no P.B.X. service without a P.B.X. operator, who is an employee of and paid by the subscriber. The maximum P.B.X. service to which the rate entitles the subscriber is determined by the capacity of the facilities furnished and the capacity of the P.B.X. operator to complete calls.
Rates involve two major considerations, viz., revenue requirements and determination of balance between different classes of service. In making rates attention is given to the cost of the particular service and to the value of that service and its effect upon traffic in relation to other people's service. It is the concern of the management that every subscriber shall get the service and only the service contemplated in the rate he pays. If this cannot be done by selling the subscriber the correct service it must be done by rate treatment, since abuse of service by one class of subscribers tends to interfere with the service rendered to another class. The rate is based upon the service to meet average use.
P.B.X. service is different from individual line service. The rate for each is based upon the use designed to be made of each by the subscriber, and the P.B.X. rate is designed to meet the average use, contemplating the placing of calls by a P.B.X. operator.
There is no uniformity of use of P.B.X. service. Some subscribers have their boards attended twenty-four hours a day, some a lesser time. Some have all calls dialed by the operator, others have varying percentages of calls so dialed. Some, for reasons aside from the cost want only part of their telephones dialed, the proportion varying, some want none of them dialed while others want all dialed. There is no uniformity in this demand such as would make possible the derivation of an average condition. Without considering inter-communicating calls on the premises, P.B.X. subscribers get their service at less per call than subscribers for any other class of service in St. Louis. *Page 323 
Individual line service requires a dial on each telephone, the furnishing of which is paid for in the subscriber's exchange rate. P.B.X. service, as designed and intended to be used, does not require a dial on the telephones but only on the switchboard. The dial on the switchboard is furnished and is paid for in the exchange rate, but dials on the station telephones are not included in the exchange rate. When a user of a P.B.X. telephone has his telephoned plugged through the board to the central office he is not getting P.B.X. service as contemplated in that service and in the exchange rate therefor but is getting individual line service added to or superimposed upon P.B.X. service for the price of P.B.X. service alone. The reason no rate treatment was applied to such additional use under manual operation was that there was no censorship which the company could apply and no way in which bills could be rendered therefor. It had been the practice of the company, however, to charge for night and holiday numbers so that incoming calls to P.B.X. boards could be handled after hours and an extra charge had been made for that service. "The night listing charge is a corrective measure on incoming service, while the other (dial charge) is a corrective measure on outgoing service."
The cost of furnishing and maintaining dials on P.B.X. station is 17.3 cents per month, and out of the 25 cents per month charged the city collects 1¼ cents, leaving 23¾ cents per month to the company. The earnings of the St. Louis exchange for the first nine months of 1927 were 4.07 per cent on the original cost of the property. The dial charge, while not regarded as essentially a revenue measure, realizing only $12,500 per year out of a total annual revenue of nearly $10,000,000, yet has some revenue value, especially in view of the low return received by the company on its investment.
In computing the cost and the operating effect of converting the St. Louis exchange to automatic, it was not estimated that dials would be placed on P.B.X. telephones. To furnish dials for all such telephones would require an additional investment of $250,000. In addition, the plant is engineered to complete 97½ per cent of calls on the first attempt. If the calling rate on P.B.X. trunks should increase over the calling rate for which the plant was engineered, it might so congest the plant as to react on the service of other subscribers and even become serious enough to require re-engineering and reconstruction of parts of the plant in order to maintain the standard of service, which in turn would require a change in the level of rates to all unless that burden is carried by those subscribers who cause the increase.
The company's expert witness, Mr. Widen, who it was stipulated was "qualified as a telephone expert to testify upon any subject of telephone operation," further testified that the dial charge was *Page 324 
introduced with a view of preventing a possible necessity of re-engineering the plant, entailing a large investment aside from the $250,000 for dials; that the rate, in addition to producing some revenue, was a corrective rate in that it prevented P.B.X. users from securing a service for which they did not pay and because it tended to distribute more equitably the cost of service by compelling those who desired dials to pay rates more nearly in proportion to the service rendered them.
Appellant says there are but two points involved in the case: (1) that the cost of service is not the sole standard for measuring rates, as rates should not exceed the value of the service to the consumer; (2) that discriminatory rates are unlawful. If by "discriminatory rates" is meant rates which are unjustly discriminatory, respondents do not controvert either principle.
On the first proposition appellant says it is conceded "that the extra dial equipment for which it is sought to charge an additional rate is necessary in order to give the same kind ofservice as was rendered heretofore under the manual system of operation," and argues that therefore no value is given for the added charge. The argument overlooks the fact, shown by the company's undisputed evidence, that a part of the service formerly obtained by the subscriber, viz., that which he could and often did obtain under the manual system and cannot obtain without the dials under the automatic system, was an additional service not constituting, nor intended by the company to constitute, a part of the P.B.X. service, properly speaking, and not included in the rate charged for P.B.X. service; in short, a service for which the P.B.X. subscriber does not pay in the scheduled P.B.X. rate. That the subscriber may have been getting that additional service without charge under the manual system, because the company could not practically make and enforce a charge for it, does not establish a right to continue doing so, nor prove that such additional service is not in fact worth to the consumer what the company now charges for it. There was no testimony that the service in question is not reasonably worth to the consumer the charge made for it. The evidence showed that P.B.X. subscribers paid less per call than any other class of subscribers and that the rates for service in St. Louis yield a low return to the company. We think the commission could not properly have found under the evidence that the rate in controversy exceeds the value of the service.
It is contended that the rate is unjustly discriminatory as between the former and the present service because P.B.X. users formerly received the same service without the added charge; and as between P.B.X. subscribers and individual-line subscribers because the latter are not required to pay the additional charge. *Page 325 
From the facts stated and what we have said above we think it apparent that appellant's contention that the rate is unjustly discriminatory as between the former and the present service cannot be sustained. Aside from any other consideration the evidence shows that P.B.X. subscribers, while formerly receiving the service without charge, were not entitled so to do and received it because no censorship could practically be applied to the service.
Nor are we persuaded that the rate is discriminatory as between P.B.X. and individual line subscribers. As found by the commission: "The service is not furnished under the same or substantially the same circumstances and conditions, and the service itself is of an entirely different character."
The individual-line subscriber pays in his rate for direct access to the company's central office and to get it must have the dial on his telephone. The P.B.X. subscriber pays in his P.B.X. rate for access through the instrumentality of his own operator, and is furnished a dial on the switchboard for the use of that operator, thus giving the subscriber the service to which his P.B.X. rate entitles him. No unlawful discrimination therefore exists because dials are furnished to individual line subscribers without extra charge and are not so provided for individual telephones of P.B.X. subscribers.
In its findings and conclusions the commission further said:
"The telephone instrument used on individual-line service must of necessity be equipped with a dial in order that they can secure this service, but this is a necessity that all require, whereas but few of the stations on the private branch exchanges do. The greater portion of said stations will not require the installation of a dial, and the unnecessary expense of installation should not be put upon the subscribers of the exchange. This fact has been recognized by other Commissions and the dial charge has been approved and is in force in forty-four of the United States and also in the District of Columbia. The Commission is of the opinion that the charge is just and reasonable and should not be disturbed."
If all P.B.X. stations were charged at the same rate and only part of them equipped with dials there might be discrimination as between P.B.X. subscribers whose stations were so equipped and those whose stations were not so equipped.
"Arbitrary discriminations alone are unjust; if the difference in rates be based upon a reasonable and fair difference in conditions which equitably and logically justify a different rate, it is not unjust discrimination." [State v. M.K. T. Ry. Co., 262 Mo. 507, 525, 172 S.W. 35, 40, and cases cited.] See also State ex rel. Pugh et al. v. Pub. Serv. Comm. (Mo.),10 S.W.2d 946, 951.
The company owns its property and, subject to the regulatory power of the State exercised through the commission, may adopt *Page 326 
such reasonable methods and regulations as it believes will be fairly and generally beneficial to it and all of its customers. [Chicago, Milwaukee St. P. Railroad Co. v. State of Wisconsin,238 U.S. 491, 501; Hewlett v. W.U. Tel. Co., 28 F. 181, 184.]
The rate in controversy having been approved by the commission the burden rested upon complainant seeking to set it aside "to show by clear and satisfactory evidence" that it is unreasonable or unlawful. [Sec. 5247, R.S. 1929; State ex rel. S.W. Bell Tel. Co. v. Pub. Serv. Comm. (Mo.), 233 S.W. 425, 430; State ex rel. City of St. Joseph v. Busby et al. (Mo.), 274 S.W. 1067, 1072.] We think the evidence failed so to show and that the circuit court properly affirmed the order of the commission.
The judgment of the circuit court is affirmed. Davis, C.,
concurs; Westhues, C., not sitting.