STATE of Missouri, ex rel. DePAUL HOS-
PITAL SCHOOL OF NURSING, a Cor-
poration, Complainant-Respondent,

v.

PUBLIC SERVICE COMMISSION of the
State of Missouri, William R. Clark, Chair-
man, Charles J. Fain, Marvin Jones, How-
ard Elliott, Jr., and Willard Reine, Com-
missioners, and Southwestern Bell Tele-
phone Company, a corporation, Appellants.

No. 25450.

Kansas City Court of Appeals,
Missouri.

Dec. 7, 1970.

Motion for Rehearing or Transfer to
Supreme Court Denied Feb. 1, 1971.

Application to Transfer Denied
April 12, 1971.

Jeremiah D. Finnegan, Gen. Counsel,
Dale Sporleder, Asst. Gen. Counsel, Jef-
ferson City, for Public Service Commis-
sion of Missouri.

William C. Sullivan, James E. Taylor, St. Louis, for Southwestern Bell Telephone Co.

Norman Bierman, Stuart M. Haw, Jr., Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for DePaul Hospital School of Nursing.

FLOYD L. SPERRY, Special Commissioner.

DePaul Hospital School of Nursing, a corporation, receives telephone service from Southwestern Bell Telephone Company, a corporation, in St. Louis, Missouri. It filed a complaint againt Southwestern, before the Public Service Commission, charging that Southwestern was discriminating against it in the matter of rates charged, under the provisions of "Public Service Commission Law", R.S.Mo., 1959, Section 392.200, sub-sections 1, 2 and 3. A hearing was held and the Commission dismissed the complaint. This order was reversed by the Circuit Court of Cole County. Southwestern and the Commission appeal.

Southwestern is a public utility. Its services are divided into various classifications, with different service groups, usage, customer and rate characteristics applying to each classification. The charges for these various groups, so classified, are set forth in "tariffs" filed with the Commission. Some of such classifications of service are residence, business, private branch exchanges of several types. In this case we are interested in "commercial branch" and "hotel" service. The latter customers are charged lower rates than the former.

DePaul Hospital, a corporation, has operated "DePaul Hospital School of Nursing", a corporation, a training school for nurses, since 1930, in conjunction with the hospital. An eight story nurses' residence is located adjacent to the hospital and connected thereto by a corridor. In it are two hundred rooms, one hundred fifty occupied by nurses in training, the others by their female relatives and friends, and by females having relations with the hospital, who are transients. There is a lounge, a ballroom, sundeck, air conditioned "rumpus" room with recreational facilities, an auditorium and "gym", a library, laundry and other facilities.

In this building are two hundred bedrooms, each with a telephone. There are also twenty other telephones. The occupants of each of these rooms were permitted to make and receive local and long distance calls. The corporation paid all charges. There is a separate switchboard therein, with three trunk lines. Complainant had a hotel license from the city of St. Louis. This was required by the City of St. Louis.

Prior to 1968, DePaul Hospital was billed monthly for service to it and to the nurses' home. Thereafter it was separately billed and it is complaining that its rates are discriminatory. The charges were those prescribed under Southwestern's tariff for commercial flat rate business, private exchange service at $28.50 per trunk per month, and $1.50 per month for each telephone. Complainant contends that it should have been charged the lower "hotel" rate, which was paid by the Missouri Athletic Club and Evangeline Residence, both in the City of St. Louis and by other "hotels" in that city. It contends that it received the same identical service as was received by the other named institutions, and that Southwestern discriminated against it, in violation of Section 392.200, subsections 1, 2, 3, supra. The basis of the charge of discrimination is the higher rate charged to it while a lower rate was charged to others who received substantially the same service.

Section 392.200 forbids discrimination in charges for doing a like or contemporaneous service with respect to communication by telephone under the same or substantially the same circumstances and conditions. Complainant claimed that it was charged a much higher rate than was charged other customers (under the hotel rate) who received substantially the same services under

substantially the same circumstances and conditions. The circuit court, on review, stated that the pleadings, testimony, evidence and briefs "show that this was the issue to be tried on the complaint and this was the issue tried." We hold that analysis to be correct.

Nowhere in Southwestern's provisions concerning "hotel" rates is there any definition of a "hotel". There was testimony of a qualified telephone cost analysis consultant, a former employee of Southwestern, who gave testimony based on documents emanating from the offices of Southwestern. It was shown that the "hotel" rate would apply if:

1. The business had a hotel or motel license where applicable.

2. The customer must provide services as follows: (a) Room telephone for guests; (b) local and long distance service must be permitted to guests over room telephone.

It would appear that, under that evidence, complainant is qualified to receive the hotel rate.

The Evangeline Residence enjoys the hotel rate. It has two hundred telephone stations, ten trunks, and is occupied by business women only, of the St. Louis area. It is operated by the Salvation Army. The telephone equipment is, basically, the same as that used by complainant. There is a telephone in each of the guest rooms. Guests may make local and long distance calls from their respective rooms. It does not accept transient guests but requires a thirty day minimum residence by guests.

No valet or room service. Evangeline is charged, under the hotel-motel rate, $8.50 for each trunk, and 90 cents for each station. Complainant is charged for almost identical service, under the same circumstances and conditions, $28.50 per trunk and $1.50 per station, at the rate under "commercial flat rate PBX service". There was testimony to the effect that

Missouri Athletic Club, located in St. Louis, receives the hotel-motel rate from Southwestern. It has a dial system whereas complainant has a manual switchboard located on the third floor, which it operates. Athletic Club provides guest room telephone service to its guests, substantially the same as does complainant, and as do other hotels. Its guests are restricted to males who are members of the club or who are guests of members. No one except a member or his guest may ever enter the building. There are 110 guest rooms. It was shown that the hotels Baltimore, DeSoto and Fairgrounds in St. Louis are provided the same telephone equipment and service by Southwestern, as it provides to complainant and Evangeline, and that they are charged the hotel and motel rate. There was also testimony to the effect that Evangeline requires its guests to be in their quarters on or before a certain stated time week nights, and also weekend nights.

There was substantial evidence to the effect that Southwestern charged complainant a different and higher rate than it charged Evangeline, Athletic Club, Baltimore, DeSoto and Fairground hotels, although it furnished to each and all the same, or substantially the same, service under substantially the same conditions. We have found no substantial evidence to the contrary. This constitutes a practice that is prohibited by the terms of Section 392.200 supra.

In State ex rel. McKittrick v. Missouri Public Service Commission, 352 Mo. 29, 175 S.W.2d 857, 866, it was held that a utility may have two or more rates if they be for different character of service, but to have two or more rates for the *same* service is the thing forbidden by the non-discrimination statute. The word "hotel" in connection with Southwestern's hotel-motel rate, was not defined therein. Hotels may have many different characteristics. The word should be given a liberal construction. This is true because the Commission should liberally construe all features of the Public Service Commission law.

**740**

State ex rel. Laundry, Inc. v. Public Service Commission, 327 Mo. 93, 34 S.W.2d 37, 46. In that case a water company maintained what it denominated a "manufacturers' rate". The laundry companies contended that they were entitled to the rate because the volume of water used by them was that required under the "manufacturers' rate". The Commission denied relief on the grounds that complainants were not, in fact, manufacturers. The manufacturers' rates, as prescribed and filed with the commission, were " * * * a flat rate of 15 cents per thousand gallons, with a discount of 10 per cent for cash paid in ten days, where consumption of water for manufacturing purposes amounted to 500,-000 gallons per month". The court said that the filing of this rate, and its approval by the Commission, became the equivalent of a legislative enactment, and that the Commission had, by its ruling, given a narrow construction to the term "manufacturing". It was held that the rate was discriminatory unless it was applied to all users of water who were similarly situated, and affirmed the circuit court ruling wherein the Commission's action was disapproved.

In State ex rel. City of St. Louis v. Public Service Commission, 327 Mo. 318, 36 S.W.2d 947, 950, it was said that arbitrary discriminations alone are unjust but, if the difference in rates be based upon a reasonable and fair difference in conditions which equitably and logically justify a different rate, it is not an unjust discrimination. In the instant case the overwhelming weight of the evidence is to the effect that the service rendered to complainant was of like character and under virtually the same conditions as those provided in Southwestern's service to Evangeline and Athletic Club, as well as to those other customers mentioned in evidence. However, the rates charged complainant were near three times those charged to the aforementioned customers under the "hotel-motel" rate.

An order of the Public Service Commission *must be based upon competent and substantial evidence.* State ex rel. Public Service Commission v. Shain, 342 Mo. 867, 119 S.W.2d 220, 222. There is no substantial evidence of record tending to show that the operation of complainant's nurses' home was different in any material respect than the operation of Evangeline and Athletic Club, *both* of which received a substantially lower rate, denominated as a hotel-motel rate, which rate was arbitrarily denied to complainant.

The Commission's order is not supported by competent and substantial evidence. The judgment of the circuit court reversing the order and remanding the cause to the Commission is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of FLOYD L. SPERRY, Special Commissioner, is adopted as the opinion of the Court.

All concur.