**STATE of Missouri, ex rel. CITY OF GRAIN VALLEY, Mo., Relator–Appellant,**

**v.**

**The PUBLIC SERVICE COMMISSION OF the STATE of MISSOURI, Respondent,**

**and**

**Southwestern Bell Telephone Company, a corporation, Intervenor–Respondent.**

**No. WD 41020.**

Missouri Court of Appeals, Western District.

July 11, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 1989.

Application to Transfer Denied Nov. 14, 1989.

Jeremiah D. Finnegan, Kansas City, James T. Cook, Grain Valley, for relator-appellant.

William K. Haas, Asst. General Counsel, Jefferson City, for PSC.

Ann Mesle, Kansas City, for intervenor-respondent.

Before TURNAGE, P.J., and CLARK, and FENNER, JJ.

TURNAGE, Presiding Judge.

The City of Grain Valley filed a complaint against Southwestern Bell Telephone Company with The Public Service Commission alleging that Bell had discriminated against its customers in Grain Valley by charging them a greater fee than customers in Blue Springs. Section 392.200.2, RSMo 1986. After holding public hearings the Commission issued its report and order in which it found that Grain Valley customers received the same service as Blue Springs customers but that the service was not provided under the same circumstances. The Commission dismissed the complaint. On appeal to the circuit court the Commission's decision was affirmed. Grain Valley contends the Commission's order is not reasonable because it is not supported by competent and substantial evidence. Reversed and Remanded.

The facts are virtually undisputed. Prior to May, 1956, Bell supplied telephone service to Grain Valley through a magneto switch located in Grain Valley. Grain Valley customers cranked a telephone to trip a switch in the Grain Valley office and an operator manually connected the caller to the desired number. In May, 1956, the Bell office in Grain Valley was closed and the magneto switch was removed. Telephone service for Grain Valley was thereafter provided through an office in Blue Springs. Also at that time a dial system was installed so that instead of the crank instrument, a customer lifted the receiver and heard a dial tone and proceeded to dial the desired number. Bell concedes that when Grain Valley customers began receiving service from the Blue Springs office that the same service was given to Grain Valley as was given Blue Springs. All phones in the two areas received the dial tone from the Blue Springs office. All calls were carried over wires to the Blue Springs office where the call was switched to its destination. Bell could not tell whether a call originated in Blue Springs or Grain Valley under this arrangement, but Bell desired to charge more to Grain Valley subscribers so it was necessary to assign a different number prefix to Grain Valley phones. Without this difference and some modification to the switching equipment, Grain Valley customers would have the same calling capacity as Blue Springs customers. With the modification and by assigning different numbers, Bell was able to impose a toll of five cents per call for residential customers and fifteen cents per call for business customers for calls placed in Grain Valley to Blue Springs.

Long Distance tolls for Grain Valley customers were calculated from the Blue Springs office, but calls in the metropolitan

Kansas City area were charged on the distance from a point in Grain Valley shown on a map filed by Bell with the Commission. There was no office or telephone function located at such point. It was simply a point placed on a map from which Bell measured the distance from Grain Valley to other parts of the metropolitan area for the purpose of calculating inter-zone charges in the Kansas City area.

In 1962, Blue Springs customers were first offered optional toll free service under the Wide Area Service Plan (WASP) for fixing tolls for calls to and from telephones in the Kansas City area. This plan involved tiers drawn around the downtown area of Kansas City. There was a center zone with four tiers around it. The Blue Springs area was placed in the third tier and Grain Valley in the fourth. The higher the tier number the greater the toll to call other parts of the metropolitan area. Optional toll free service meant that by paying a higher monthly fee a customer could call anywhere in the Kansas City area toll free. Grain Valley customers did not get optional toll free calling until 1970 when it was given fourth tier status. There is a much higher rate for telephones in the fourth tier than those in the third tier.

In 1976, on a complaint by Blue Springs, the Commission ordered that Blue Springs be changed from a third tier to a second tier status. As a result of this change all customers in the Blue Springs area received toll free calling in the metropolitan Kansas City area on a non-optional basis. The fee for the Blue Springs phones are considerably less than the fee for phones in Grain Valley. Even Grain Valley customers who elect to take optional toll free service pay much higher fees than Blue Springs customers. The evidence showed that Grain Valley customers pay $94,275 per year more in telephone rates than do Blue Springs customers.

A Bell engineer testified that the Blue Springs and Grain Valley areas were considered by Bell as one entity and one geographic location. He stated the switch equipment for receiving and dispatching calls for telephones in both areas was placed in Blue Springs because that was the wire center. He explained that the wire center is the center of the length of all of the loops of wire that serve a territory. The switching equipment is placed in the wire center as a matter of economy and the engineer stated that if the population of Grain Valley grew so that the wire center moved east from Blue Springs a wire center with switching equipment might be located in Grain Valley. He stated that after the modern electronic switching system was installed in 1975, Bell had written a program for its switching equipment by which Grain Valley customers were identified by giving them a different number prefix than Blue Springs customers as had previously been done. In that way the toll could be maintained for calls from Grain Valley to Blue Springs. He stated the equipment handled the calls originating in Blue Springs or Grain Valley in the same manner, and were it not for the special program placed in the equipment, there would not be any distinction between a call placed in Grain Valley from one placed in Blue Springs. He stated there was no difference between a customer who is located four miles south of the central office in Blue Springs from one who is located four miles east but who is in the Grain Valley area. Both had their calls go from the individual telephone to the office in Blue Springs.

There was evidence from Bell that it could not identify costs on an embedded basis for telephones in a particular area when electronic switching was done on the same switching equipment. In other words, Bell could not identify a greater embedded cost for serving Grain Valley telephones than for serving Blue Springs telephones because they were served by the same switching equipment.

Grain Valley contended that because its telephones were served by the same equipment as Blue Springs telephones and there was no greater cost incurred by Bell in serving Grain Valley customers that Bell was in violation of § 392.200.2, RSMo 1986. That section provides:

No telegraph corporation or telephone corporation shall directly or indirectly or by any special rate, rebate, drawback or other device or method charge, demand, collect or receive from any person or corporation a greater or less compensation for any service rendered or to be rendered with respect to communication by telegraph or telephone or in connection therewith, except as authorized in this chapter, than it charges, demands, collects or receives from any other person or corporation for doing a like and contemporaneous service with respect to communication by telegraph or telephone under the same or substantially the same circumstances and conditions.

The Commission found that Grain Valley customers were receiving the same or similar service as Blue Springs customers and that there was no additional cost in serving Grain Valley customers. The Commission ordered Bell to discontinue the toll charge for calls made from Grain Valley to Blue Springs.

The Commission found that Grain Valley customers were not being provided service under the same circumstances as Blue Springs customers. The Commission found that the WASP plan had been established and various areas assigned to certain tiers based on the distance from the center zone to the various tiers. The Commission found that Grain Valley was not challenging the reasonableness of the WASP plan and therefore Grain Valley was not challenging the criteria used for the placement of areas in particular tiers. The Commission found that Grain Valley is farther from the center zone than Blue Springs, is more sparsely populated and has a slower growth rate than Blue Springs. The Commission concluded that Grain Valley had failed to establish that the characteristics of Grain Valley had changed significantly since the implementation of the WASP plan, therefore it could not find that Grain Valley customers were being served under the same circumstances as Blue Springs customers.

The Commission failed to address the full scope of the complaint brought by Grain Valley. Grain Valley customers contended that they were receiving the same service as Blue Springs under the same circumstances or conditions but were being charged a higher fee. The Commission addressed the first part of the complaint when it found that Grain Valley received the same service as Blue Springs but it lapsed into a discussion of the WASP plan rather than deciding whether or not Grain Valley customers were receiving telephone service under the same conditions as Blue Springs customers.

The criteria utilized in assigning various areas to particular tiers under the WASP plan does not address the same question as whether or not Grain Valley is receiving telephone service under the same conditions as Blue Springs customers. The undisputed evidence shows that Grain Valley and Blue Springs customers are receiving the same services and the Commission reached the only conclusion on that question which it could. However, the factors to be considered in deciding whether or not the same service was under the same condition calls for a determination of whether or not there are factors present relevant to telephone service which would make the condition of service different in Blue Springs from that in Grain Valley.

In *State ex rel. City of St. Louis v. Public Service Com'n of Missouri,* 327 Mo. 318, 36 S.W.2d 947, 950[2] (1931), the court stated that a difference in rates must "be based upon a reasonable and fair difference in conditions which equitably and logically justify a different rate...." The Commission found a difference in the population of Blue Springs and Grain Valley, a difference in growth rate, and that Grain Valley was separated from Blue Springs by a rural area. The Commission failed to explain how any of the factors mentioned by it would constitute an equitable and logical justification for a different rate in Grain Valley.

Usually different conditions are found to exist when there is a difference in the cost of furnishing the service. *Ford v. Rio Grande Valley Gas Co.,* 141 Tex. 525, 174 S.W.2d 479, 480[2–4] (1943). In *State ex rel. Utilities Com'n v. Bird Oil Comp.,* 302 N.C. 14, 273 S.E.2d 232, 238[7] (1981), the court listed several factors which would constitute substantial differences in condi-

tions of service such as "(1) quantity of use, (2) time of use, (3) manner of service, and (4) costs of rendering the two services." In *Kliks v. Dalles City*, 216 Or. 160, 335 P.2d 366, 378[18] (1959), the court recognized the same factors stated in *Bird* and added "or any other factor relating to the cost of furnishing the service." In *Kliks*, the court considered water rates which drew a distinction between apartment houses and hotels. The court noted that there are distinctions between the two buildings such as nature of occupancy, character of service offered and manner in which the facilities are used. The court held that although such distinctions might be the basis for differences in taxation, when it came to imposing charges for water the distinctions were not important. *Id.* 335 P.2d at 378[19]. By the same token the difference relied upon by the Commission in this case is not important in considering the question of the same conditions. In *State ex rel. DePaul Hosp. S. of N. v. Public Serv. Com'n*, 464 S.W.2d 737, 740[3] (Mo.App.1970), this court found that telephone service to a school of nursing was service given under the same condition as telephone service to a hotel.

The differences pointed out by the Commission between Blue Springs and Grain Valley do exist, but there is no relation between those differences and the conditions under which telephone service is furnished to the two areas. The telephone customers in Grain Valley received their dial tone from the Blue Springs office, received the same telephone service, were billed monthly just as the Blue Springs customers and were entitled to the same service from Bell as the Blue Springs customers. Bell did nothing differently in furnishing telephone service for the Grain Valley customers than it did for the Blue Springs customers. Both customers had

their calls routed through the Blue Springs office with no difference in cost to Bell. In the face of this undisputed evidence there was no substantial and competent evidence upon which the Commission could base a finding that the telephone service to Grain Valley customers was not given under the same conditions as service to the Blue Springs customers. The differences pointed out by the Commission do not address the question of whether the telephone service was furnished under the same condition. There was no evidence of any difference in conditions under which service was given to the two areas which would equitably and logically justify a different rate.[1]

Bell makes some argument that this court in *State ex rel. City of Oak Grove v. Public Serv. Com'n*, 769 S.W.2d 139 (Mo.App.1989), compared the population of the cities involved in that case. In that case the population of the cities was relevant because this court was comparing one city with another. It was not dealing with a situation where the same service was furnished and the only question was whether it was furnished under the same condition.[2]

The finding by the Commission that the telephone service furnished Blue Springs and Grain Valley was the same is supported by substantial and competent evidence. The finding that such service was not furnished under the same condition is not supported by substantial and competent evidence. The judgment is reversed and this cause is remanded to the circuit court with directions to remand this cause to the Commission for further proceedings.

All concur.

1. In addition to the factors mentioned by the Commission, Bell argues that the value of service to Grain Valley customers was greater because they were farther from the center zone. Assuming without deciding that value of service is a relevant factor to consider on the question, Bell overlooks the fact that Grain Valley had the same service as Blue Springs. Therefore, Grain Valley customers had the same calling range and number of telephones available to call as

Blue Springs. In short, there was no difference in value of service between the two areas.

2. Bell further argues that Grain Valley is one of six areas served by a switch located in another area. The fact that other areas also may be discriminated against has no bearing on whether Grain Valley is paying higher fees than permitted by the statute.