STATE ex rel. NATIONAL TRAILER CON-
VOY, INC., et al., Relators-Appellants,

v.

PUBLIC SERVICE COMMISSION of the
State of Missouri, Respondent.

No. KCD 25887.

Missouri Court of Appeals,
Kansas City District.

Dec. 18, 1972.

Richard M. Webster, Myers, Webster
& Perry, Webb City, for National Trailer
Convoy, Inc., and Morgan Drive Away,
Inc.

Herman W. Huber, Jefferson City, for
Transit Homes, Inc.,

Jeremiah D. Finnegan, William F. Lilien-
siek, Gen. Counsels, Missouri Public
Service Commission, Jefferson City, for
respondent.

Before SHANGLER, C. J., and CROSS, DIXON, PRITCHARD, SWOFFORD and WASSERSTROM, JJ.

SWOFFORD, Judge.

This is an appeal from the action of the Missouri Public Service Commission granting a certificate of public convenience and necessity to William R. Wade d/b/a Wade's Mobile Home Movers. The appellants were intervenors and protestants before the Commission. The Circuit Court affirmed the action of the Commission and the relators-appellants have duly appealed to this court.

Wade, a former employee of appellant National Trailer Convoy, Inc., had set up his own business with headquarters in Kansas City, Missouri to engage in the moving of mobile homes or house trailers upon the highways. Each of the three appellants was also engaged in that business with terminals or headquarters in Kansas City, and each was at all times operating its intrastate business under certificates of convenience and necessity previously issued to them by the respondent, Missouri Public Service Commission.

Wade applied for a certificate under the terms of Section 390.051 V.A.M.S. to tow or move house trailers as a common carrier to and from and between all points within a radius of 100 miles of Kansas City, Missouri and to, from and between all points within the state of Missouri, on the one hand, and all points within said ·100 mile radius of Kansas City, Missouri, including Kansas City, Missouri, on the other hand.

After hearings, the Commission issued its order granting a certificate to Wade, the pertinent part of which is as follows:

"Ordered 1.

Common Carrier, Intrastate Irregular:

To transport or tow as a common carrier by motor freight 'house trailers' to, from and between all points within a 90 mile radius of Kansas City, Missouri including Kansas City, Missouri.

Such service is authorized irrespective of the location of such points on the routes of regular motor carriers."

Application for rehearing was denied by the Commission and the relators, having exhausted all of their administrative remedies, filed a petition for review of this order in the Circuit Court of Cole County, pursuant to Section 386.510 V.A.M.S. That court affirmed the order of the Commission and this appeal followed.

It is the position of the appellants, that the Circuit Court of Cole County, Missouri erred in affirming the report and order of the Commission in that there was no competent and substantial evidence upon the whole record from which the Commission could find that public convenience and necessity would be promoted by or that there was a public need for the broad grant of authority, as required by Section 390.051 V.A.M.S.; that the Commission failed to give proper consideration to present service being furnished by common carriers, including appellants, and the adverse affect upon them of the granting of the certificate to Wade, and that the Commission's order is arbitrary, capricious, contrary to the overwhelming weight of the evidence, contrary to law and therefore unjust, unreasonable and unlawful.

The respondent denies any error in the Commission's order or in the actions of the Circuit Court and vigorously asserts that the results of these proceedings are justified by competent and substantial evidence upon the whole record and that the action of the Circuit Court should be affirmed.

Section 386.510 V.A.M.S. provides for proceedings for review of orders of the Public Service Commission by the Circuit Court and appeal therefrom to this court. The proceedings in the Circuit Court are to be tried and determined as suits in equity. Both the proceedings in the Circuit Court and here are based exclusively upon

"the evidence and exhibits introduced before the commission and certified to by it." Our determination upon this appeal also falls within the mandate of Section 22, Article 5, of the Constitution of Missouri, V.A.M.S., which provides, in part:

"All final decisions, findings, rules and orders of any administrative * * * body * * * which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record."

We must first determine the provisions and requirements of the statutes relating to the power of the Public Service Commission to order certificates of convenience and necessity in cases such as that now before us. This authority is found in Section 390.051 V.A.M.S.

This statute provides that no person shall engage in the business of common carrier in intrastate commerce on any public highways unless it has a certificate of authority from the Commission (Section 390.051(1)).

It provides for a written application to contain specified information (Sec. 390.051 (2)); for hearing and intervention of classes of interested parties (Sec. 390.051 (3)).

This section further provides:

"4. If the commission shall find from the evidence that public convenience and necessity will be promoted, or that there is public need for the creation of the service proposed, or any part thereof, and that the applicant is qualified properly to perform the service proposed and to conform to the provisions of sections 390.011 to 390.176 and the requirements, rules and regulations of the commission established thereunder, a certificate therefor shall be issued.

"5. In determining whether a certificate should be issued the commission shall give reasonable consideration to the transportation service being furnished by any common carrier by rail or motor vehicle and the effect which the proposed transportation service may have upon such carriers; provided, that the issuance of a certificate of convenience and necessity to one carrier shall not prohibit the granting of such certificate to another carrier over the same route if in the opinion of the commission the public convenience and necessity will be promoted by so doing."

The record before us clearly indicates that there are only two real areas of controversy between the parties. *First,* was the issuance of the certificate to Wade supported by competent and substantial evidence upon the whole record that there was a *public* need and *necessity* for the service? *Second,* was sufficient consideration extended by the commission to the presently existing service and adverse effects thereon of the certification to Wade?

■ Addressing the problem of public necessity for the service sought, it is not inappropriate (but indeed necessary) for us to recognize and emphasize the fact that we cannot weigh the evidence nor substitute our judgment for that of the commission. Rather, our appellate function is to determine whether the commission could have reasonably made its findings and reached its results upon due consideration of all the evidence before it or, stated differently, is the finding of the commission supported by competent and substantial evidence. State ex rel. Byers Transportation Co. v. Public Service Commission, Mo.App., 246 S.W.2d 825; Goetz v. J. D. Carson Co., 357 Mo. 125, 206 S.W. 2d 530; Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647, 649.

■ This administrative proceeding is deeply impressed with a public interest. The purpose of our public service commission laws is basically to secure uniformity

of operating conditions among similar carriers; to secure adequate and sustained service for the public at the least possible cost; to prevent economic waste that follows useless duplication of service; and to protect and conserve investments already made to furnish and maintain such public service. State ex rel. Missouri Pacific Freight Transport Company v. Public Service Commission, Mo.Sup., 295 S.W.2d 128. In this case, the court said, l.c. 133–134:

"* * * the policy of regulation upon which our present commission plan is based is at once the reason and the justification for the holding of our courts that the regulation of an existing system of transportation, which is properly serving a given field, is to be preferred to competition among several independent systems."

■ The applicant for a certificate of convenience and necessity has the burden of establishing the need for the service sought, that such service is in the public interest, and will not work an undue hardship or adversely burden or affect the ability to perform the public service being accomplished by existing carriers.

In State ex rel. Eldon Miller, Inc. v. Public Service Commission, Mo.App., 471 S.W. 2d 483, this court said, l.c. 488:

"Although the fact situations in the reported cases do not parallel the fact situation in the case at bar, the case law of Missouri requires that an applicant for a certificate of public convenience and necessity show by *evidence* that the public convenience will be enhanced and there is a reasonable necessity for the transportation service requested. (cases cited)."

In State ex rel. Missouri, Kansas and Oklahoma Coach Lines v. Public Service Commission, 238 Mo.App. 317, 179 S.W.2d 132, the court said, l.c. 136:

" 'Necessity' as used in the phrase 'convenience and necessity', as applied to regulations by Public Service Commissions, does not mean essential or absolutely indispensable, but is used in the sense that the motor vehicle service would be such an improvement as to justify or warrant the expense of making the improvement; that the inconvenience of the public occasioned by the lack of motor vehicle transportation is so great as to amount to a necessity. * * * 'Any improvement which is highly important to the public convenience and desirable for the public welfare may be regarded as necessary. * * *' "

■ The burden thus placed upon the applicant does not, however, require that it be shown that every town or hamlet along an irregular route needs the service. State ex rel. St. Louis-San Francisco Ry. Co. v. Public Service Commission, Mo.App., 439 S.W.2d 556, 560. But substantial evidence of the need generally must be shown and that the establishment of such service will not result in ultimate detriment of existing motor-carrier service to the ultimate detriment of the public whose interest is the primary objective of the regulatory law. State ex rel. Missouri Pacific Transport Co. v. Public Service Commission, Mo.Sup., supra.

It is against this background of rules and principles that we must review the evidence before us.

The applicant, Wade, offered the evidence of seven witnesses, in addition to his own testimony, in support of his application.

Floyd Woody, a mobile home park owner and operator at El Dorado Springs, was a regular customer of the appellant National Trailer Convoy, Inc. El Dorado Springs is outside the commercial zone of Kansas City, and Woody did not purport to have an interest in or knowledge of motor carrier needs outside a 30 mile radius of that town. He testified that it is difficult to get prompt service there due to the fact that a carrier has to dead head a truck at least 80 miles to make a haul within a 30 mile radius of El Dorado Springs. He tes-

tified to two examples of poor service by National over the years, but had filed no formal complaint. He had a bad experience with appellant Morgan Drive Away with reference to a purportedly stolen license. This episode was the result of the production of two identical license plates at the Missouri State Penitentiary. Woody admitted that this latter fact would change his attitude toward Morgan. He had some misunderstandings with National with reference to his accounts. He had never used appellant Transit's service. He was presently dealing with National through their Mr. Denton Stockton at Springfield, Missouri and had no objections to continuing that relationship. He testified in May of 1970 and had used intrastate motor carrier service 3 or 4 times during 1970.

Claude Keyser operates a mobile home sales business in Kansas City, Missouri and his sales are almost exclusively within the Kansas City area. He operates his own truck to move trailers and would not dispose of it. He had used appellant National 27 times in 1969 on repossession of equipment for banks. He made no complaints with regard to these movements. He had a trailer damaged on one occasion by appellant Transit and has not used its service since. He anticipated slow service and that is why he uses his own truck. He would plan to use Wade exclusively within the state if commercial moving was necessary. He has no knowledge about the need for service generally outside the commercial zone of Kansas City.

William L. Pitts operates a mobile home sales lot in Kansas City. He uses his own truck for hauling outside Kansas City. He had used National during the year 1969 and had no complaints about the service. He had a bad experience with National upon one occasion, when applicant Wade was working in that company's office in Kansas City. He had made no attempt to ascertain the availability of certified carriers within the state or within his area. He would like to use Wade to set up double wide mobile homes.

Marion Hutchenson had requested National to move his mobile home from the Marshall, Missouri area to Liberty. There was a delay and he lost two days work. He had to employ Wade to set up the home at Liberty. He testified, however, that he had no objection to using National's services if he had occasion to move again.

Frank Riley is the owner and operator of the mobile home court where witness Hutchenson had rented space. He was familiar with Hutchenson's difficulties regarding delay and placement of his mobile home. He indicated it was a difficult place to put a trailer. He stated deliveries were usually late. He had no personal knowledge of the need for additional service; he had no need for such service, and whenever inquiry was made of him, he would recommend that the parties look in the telephone book and call either appellant National or Transit.

Jack L. Brown operates a trailer park at Blue Springs, Missouri. He had an experience where National damaged a trailer and another occasion when appellant Morgan abandoned a movement because of a blown tire on the tractor and the witness had to call National to complete the haul.

Larry D. Petty, an employee of the State Highway Department in the overdimension permit section, testified from his records that each of the appellants had been denied such permits for short periods of time in 1968, 1969 and 1970, but that at no time were all denied such permits to cover the same period.

The applicant, William R. Wade d/b/a Wade's Mobile Home Movers, testified that his wife served as terminal manager for National and he worked as a driver and also assisting her in the office from 1962 until October of 1969, except for a period in service. He then established his own business. He admitted that he solicited former customers of National.

He stated that he intended to establish terminals in Booneville, Nevada and St.

Joseph, in addition to his place of business in Kansas City, but he presented no evidence from those communities in support of his application. He testified that if the authority sought was granted to him, he would seek business from Marshfield Homes in Chillicothe; Home Builders in Sedalia; and Gibson Mobile Home Sales and Lukor Mobile Home Sales, both of Kansas City. None of these companies appeared in support of his application.

The appellants' evidence in opposition to the certification of Wade may be summarized as follows:

Jack Elgin, District Supervisor for appellant Morgan Drive Away, Inc., testified that Morgan had made 243 Moves through its Kansas City terminal over the period from January 1, 1969 through March 13, 1970, and that all of such moves would be in direct competition with the authority sought by Wade. He testified that Marshfield Homes was one of Morgan's regular customers, and that twenty shipments had been made for that company in a 3½ month period; that Gibson Mobile Home Sales, also a customer of Morgan outside of the Kansas City commercial zone, was being serviced by Wade within the commercial zone; that Morgan maintained terminals at Kansas City, Fenton, Kirksville, Springfield, Waynesville and Sikeston; and that the granting of the authority to Wade would have a definite adverse effect upon the business of Morgan.

Appellant National Trailer Convoy, Inc. offered the evidence of Denton Stockton, an operator working out of its terminal at Springfield, Missouri, who testified he was servicing witness Woody at El Dorado Springs and had made 6 moves for Woody between April 30 and June 19; that Woody's business represented 20% of all of his business; that he had received no complaints from Woody; and that this type of moving business was "slow" in the Springfield terminal. National offered the evidence

of Mr. Alvin Parker, its regional manager for the state of Missouri, who testified that National operated 11 trucks out of its Kansas City terminal; that National had experienced a 50% loss of business within the commercial zone of Kansas City since Wade began his separate operation; that Mr. Lukor, whom Wade asserted he would solicit for business, was a customer of National for whom it had made 42 moves in 1969.

John Daugherty testified for appellant National that there had been a 37% reduction in mobile home moves throughout the entire industry, and that there was no public need for additional carriers.

Appellant Transit Homes, Inc. offered its district manager as a witness, who testified that its authority permitted transport of mobile homes between all points in Missouri except to and from Springfield, Missouri, and that it maintains terminals at St. Charles, Waynesville, Knob Noster and Kansas City; that he knew of no complaints concerning his company's service; that his company could handle more business, and that the loss of business incident to the Wade permit would be detrimental to his company.

Upon the basis of this evidence, the commission made the following findings of fact:

"There was considerable testimony to the effect that there is a need for an additional carrier in the Kansas City area."

"* * * that a grant of authority to Applicant will not have any significant effect on the business of carriers authorized to do business within a 90 mile radius of Kansas City, Missouri."

In its conclusions, the commission states:

"* * * that public convenience and necessity will be promoted by granting authority to transport mobile homes within a 90 mile radius of Kansas City. * *"

We conclude that the evidence before the commission did not authorize either of the above findings nor the above conclusion, and that, therefore, the order of the commission was not authorized by law nor supported by competent and substantial evidence upon the whole record as required by Article 5, Section 22, of the Constitution of Missouri.

No evidence was offered by the applicant, Wade, of any need for the broad grant of service except the testimony of witness Woody of El Dorado Springs, whose testimony was limited to a 30 mile radius of that town, and at best, was weak and inconclusive, even within that limit. This area comprises only a very small portion of the authority granted to Wade.

The commission recognized this paucity of evidence by making the further finding:

"No witness from beyond El Dorado Springs appeared in behalf of Applicant. Evidence of need beyond that point was limited."

In holding that much stronger evidence of public need was insufficient to authorize a certificate, this court said in State ex rel. Byers Transportation Co. v. Public Service Commission, 246 S.W.2d 825, 827:

"* * * It appears, therefore, that necessity and convenience of more than half of the population sought to be served in the towns affected has not been shown by satisfactory evidence. *The fact that such evidence was not adduced forms the basis for a finding that no necessity existed.* State ex rel. Potashnick Truck Service v. Public Service Commission, Mo.App., 129 S.W.2d 69, 73. * * *" (Emphasis supplied)

In a similar case, this court in State ex rel. Eldon Miller, Inc. v. Public Service Commission, Mo.App., 471 S.W.2d 483, summarized the applicant's evidence in this manner, l.c. 488:

"* * * All of this evidence can only be characterized as constituting conclusions, speculation, guesswork and wishful thinking on the part of the witnesses. It has no substance. * * *"

See also: State ex rel. Orscheln Bros. Truck Lines, Inc. v. Public Service Commission, Mo.App., 433 S.W.2d 596, 604.

Such characterization applies with equal verity to the evidence in the record before us. We will further borrow from State ex rel. Eldon Miller, Inc. by stating that the testimony of applicant Wade as to his planned terminals and expansion of service and ability to serve the far-flung territory sought "is pure pie in the sky".

Neither is there any competent or substantial evidence to negative the positive evidence offered by the appellants, that the grant of the certificate of convenience and necessity to Wade would adversely affect their business and the service presently being furnished by them to the public. Indeed, the overwhelming evidence clearly establishes that such adverse effect would result from the certification.

Having concluded that the report and order of the commission are not supported by substantial evidence on the record as a whole, it follows that the judgment of the Circuit Court should be and it is hereby reversed and the cause remanded to the Circuit Court with directions to remand the cause to the Public Service Commission for further proceedings in accordance with this opinion.

All concur.