STATE ex rel. John F. OLIVER et al., Relators-Respondents,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri, Respondent-Appellant,

and

Hardy's, Inc., Intervenor-Appellant.

No. KCD 28220.

Missouri Court of Appeals, Kansas City District.

Oct. 12, 1976.

Leland B. Curtis, Jefferson City, for Public Service Com'n, respondent-appellant.

Thomas P. Rose, Jefferson City, for Hardy's, Inc., intervenor-appellant.

Herman W. Huber, Jefferson City, for Leeser Transp., Inc. and Walter Smarr.

James C. Swearengen, Hawkins, Brydon & Swearengen, Jefferson City, for Twehous Excavating Co., Inc., and Anderson Transp., Inc.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

This is an appeal from a judgment of the court below entered August 7, 1975, reversing an order of the Missouri Public Service Commission (P.S.C.), under judicial review pursuant to Section 386.510 RSMo 1969.

The procedural background of this matter reveals that on February 22, 1974, Hardy, Inc. (Hardy), a company engaged in heavy construction (roads and bridges), with its principal office and place of business at Shelbyville, Shelby County, Missouri, and then the holder of a certificate of convenience and necessity from the P.S.C. for the transport of bulk commodities by dump truck within a 75-mile radius of Bethel, Shelby County, Missouri, applied to the

P.S.C. for additional authority to haul heavy equipment, machinery and commodities for others over irregular routes between all points within 75 miles of Shelbyville and between all points within that area, on the one hand, and all points in Missouri, on the other hand, irrespective of such points being on the route or routes of any authorized regular route motor common carrier.

Applications to intervene to protest the grant of such authority were filed by the respondents John F. Oliver (Oliver), Leeser Transportation, Inc. (Leeser), Walter Smarr d/b/a Smarr Coal and Excavating Company (Smarr), Twehous Excavating Company, Inc. (Twehous) and Hannibal Quincy Truck Lines, Inc.[1] Such intervention was allowed and on April 18, 1974, an evidentiary hearing was held on Hardy's application, and on October 21, 1974, the P.S.C. issued a Report and Order granting Hardy a *portion* of the authority sought, as follows:

"To operate in intrastate commerce over irregular routes as a common carrier in the specialized service described herein: Between all points in the Missouri Counties of Clark, Lewis, Marion, Shelby, Monroe, Randolph, Chariton, Sullivan, Linn, Macon, Adair, Schuyler, Scotland, Knox, and between those counties on the one hand, and on the other, all points in Missouri, irrespective of the location of such points being on the route or routes of any authorized regular route motor carriers, in a specialized service of transporting contractors' equipment, which because of its size or weight, or both, requires the use of specialized equipment and/or specialized handling, or both, to load, or unload. It being understood that the holder of this certificate is offering a specialized service not generally provided by common carriers of freight." [2]

Applications for rehearing were filed by Oliver, Leeser, Smarr and Twehous, and on November 19, 1975, the P.S.C. corrected its Report and Order to include an additional finding that Twehous holds an authority which is in direct conflict with the application of Hardy; that Twehous has never operated under such authority; had only begun to solicit business under it; and, maintains no terminal or maintenance facilities in the area sought to be served by Hardy.

The motions for rehearing were overruled and the protesting carriers obtained a writ of review in the Circuit Court of Cole County, Missouri on December 12, 1974. The cause was presented on May 5, 1975, and on August 7, 1975, the court below reversed the Order of the P.S.C. upon the basis that it was not authorized by law and not supported by competent and substantial evidence upon the whole record. This appeal followed.

■ The appellants urge but one point on this appeal, which in summary charges the court below with error "in concluding that the order of the Public Service Commission was not unauthorized by law and not supported by competent and substantial evidence upon the whole record." While this statement wholly fails to comply with the requirements of Rule 84.04(d) and would therefore justify the dismissal of this appeal, such punitive action will not be taken. This type of case is by its very nature impressed with a public interest; substantial business and private interests and investments are involved; and, this court is reluctant to forgo its judicial function to decide the matter on the merits, because of a failure of counsel to obey the mandate of the Rule.

Further, it should be noted that appellants' brief cites only two cases and devotes a substantial portion of the Argument in the brief to an attempt to distinguish an earlier decision of this court in *State ex rel.*

---

**1.** This latter company was not a party to the review proceedings in the court below and is not a party in this appeal.

**2.** The authority granted Hardy in this order includes all of the authority held by Leeser in northeast Missouri; all of the authority held by Twehous in that area; Monroe County where authority is held by Oliver and Leeser; and, parts of Randolph and Monroe Counties where authority is held by Smarr and Leeser.

**598**

*National Trailer Convoy, Inc. v. Public Service Commission,* 488 S.W.2d 942 (Mo. App.1972), a decision upon which the court below apparently placed great reliance. The obvious should here be noted. No two cases involving the legal issues before this court are factually identical. There are striking points of similarity between this case and *National Trailer Convoy,* and the principles of law there defined are adhered to and reaffirmed, but basically, this case must be decided on the facts in this record.

In reaching a decision here, it is, however, salutary that the scope of review and the obligations placed upon an appellate court in an appeal of this nature be again noted.

Section 22, Article 5, of the Constitution of Missouri, provides in part:

"All final decisions, findings, rules and orders of any administrative * * * body * * * which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record."

Section 386.510 RSMo 1969 specifically provides for review of the orders of the P.S.C. by the Circuit Court, in the first instance, and by the appellate courts upon appeal. Such reviews and appeals are based upon the "evidence and exhibits introduced before the commission and certified to by it" and are treated and determined as suits in equity. While the court may not substitute its judgment for that of the commission, "it can determine whether the commission could have reasonably made its findings and reached its results upon consideration of all the evidence before it." It is also recognized that a resolution of this usually becomes a finding of whether or not the order of the commission is supported by competent and substantial evidence. *State ex rel. Byers Transp. Co., Inc. v. Public Service Commission,* 246 S.W.2d 825, 826[1] (Mo.App.1952); *State ex rel. Potashnick*

*Truck Service, Inc. v. Public Service Commission,* 129 S.W.2d 69, 72[1–5] (Mo.App. 1939); *State ex rel. National Trailer Convoy, Inc. v. Public Service Commission,* 488 S.W.2d 942, 944[1] (Mo.App.1972) and cases cited therein.

In making such determination, recognition must likewise be given to the powers conferred and restrictions imposed upon the P.S.C. with reference to the granting of certificates of convenience and necessity in matters such as the case at bar.

Section 390.051(4), RSMo 1969, requires that there be a finding

"that public convenience and *necessity* will be promoted, or *that there is public need for the creation of the service* proposed, or any part thereof, and that the applicant is qualified properly to perform the service proposed * * * *"* (Emphasis supplied)

Section 390.051(5) RSMo 1969 requires that consideration be given to the effect which the proposed service may have upon other common carriers.

In *State ex rel. Orscheln Bros. Truck Lines, Inc. v. Public Service Commission,* 433 S.W.2d 596 (Mo.App.1968), both of these statutory requirements were recognized, l.c. 603, 604[4] and the court said, l.c. 605[5]:

"Until and unless these requirements are met, the commission is not authorized to grant a certificate for this new motor carrier service."

See also: *State ex rel. Missouri Pacific Freight Transport Company v. Public Service Commission,* 295 S.W.2d 128, 131, 132[2] (Mo.1956).

The burden to establish these prerequisites for the authority sought by competent and substantial evidence rests firmly upon the applicant. This burden cannot be met by speculation, guesswork, hopes, or aspirations. In *State ex rel. Eldon Miller, Inc. v. Public Service Commission,* 471 S.W.2d 483 (Mo.App.1971), this court noted that the *need* required to be established was a *present* need, l.c. 487, and stated, l.c. 488[1]:

" * * * the case law of Missouri requires that an applicant for a certificate of public convenience and necessity show by *evidence* that the public convenience will be enhanced and there is a reasonable necessity for the transportation service requested. (Cases cited)" (Emphasis the *Eldon Miller* court's)

In order to determine if the P.S.C. could reasonably make its findings and order and grant the Hardy authority based upon substantial and competent evidence, it is first necessary to review the evidence offered purporting to show the public need and necessity for the service granted.

Donald Hardy, president of Hardy's Inc., the applicant, testified that his company was engaged in the heavy construction business with its base of operations at Shelbyville; that a great bulk of its business was the construction of roads and bridges for the State of Missouri within a 100-mile radius of Shelbyville; that such work required the moving of heavy construction equipment from one job site to another, which required the use of special road equipment; that his company owned seven pieces of such equipment, which he described; and, that such equipment was used exclusively in Hardy's business except that upon occasion he would loan some of it to his contractor friends without charge; and, that he estimated this equipment was in use about 30% of the time and idle about 70% of the time.

Hardy further testified that he sought the certificate of public necessity and convenience so that his company could haul heavy machinery and equipment for hire as a common carrier over irregular routes within a 75-mile radius of Shelbyville and from and to any point therein to all points in Missouri. He stated that such authority would overlap the authority of protestants Oliver and Leeser only.

Hardy stated that "three or four companies" had asked him to file the application. He named Altorfer Machinery Company of Hannibal, Cook Sales and Service of Chillicothe, Central Stone of Huntington, and Peabody Coal Company.

John R. Fierke of Hannibal, vice president of the Missouri Gravel Company of LaGrange, and its wholly owned subsidiary, Central Stone Company of Huntington, testified that his company did its principal business in Knox, Lewis, Ralls, Pike and Monroe Counties; that his companies are not in the construction business but are material suppliers; and, that Hardy's is one of his customers. He stated that in connection with this business they owned three portable rock crushers which were moved from time to time from one quarry site to another by means of a tractor and "lowboy" trailer owned and operated by his company. He stated that he supported Hardy's application so that a "local" hauler would be more convenient and the service proposed would be available in the event that his company's tractor and low-boy trailer were out of service for repairs or tied up on a "long haul". The following appears as part of his direct examination:

"Q. All right, in the event this application were granted, could you give the examiner any estimate of how frequently you feel your Company might call on the Applicant for service, in the space of a year, say?

A. That would be very hard to say. It would be somewhat irregular. A lot would depend on what our unit was doing, what our business was, and what our problems were, but I would say, it would be irregular, but, possibly frequent."

On cross-examination, he testified that his company had moved the portable crushers three times "in the last 90 days" with their own equipment. The following then appears:

"Q. So, you didn't use any common carriage at all?

A. No, sir.

Q. When was the last time your company used common carriage?

A. We have not."

He stated that he had been with the company for 12 years and then the following appears, upon further cross-examination:

"Q. All right, but in the twelve year period that you've been associated with these two companies, you haven't used a motor common carrier authorized by this Commission to haul any heavy machinery equipment?

A. Not to my knowledge."

Further, Fierke testified that he was not aware that Leeser had authority to transport heavy construction equipment in the area involved; that Twehous of Jefferson City probably would not be interested in his business; that he didn't see how Smarr of Columbia could be beneficial to his company; that he was not aware that Oliver of Mexico had the type of equipment needed to transport heavy machinery. On cross-examination, the following appears:

"Q. Now, if the record, in this case, would reflect the number of protestants with the necessary equipment available by this Commission to operate in your area, would you have any objection to using these protestant carrier(s) who hold the necessary authority, at this time?

A. If they would have the proper authority, the proper equipment, I would have no objection whatsoever."

He stated he had never contacted any of the companies or made any inquiry as to the service they could render, although recently Twehous has contacted his companies, by letter, offering service.

Harold Dunivent of Moberly, Missouri, a salesman for Cook Sales and Service Company of Chillicothe, Missouri (Cook) was called as a witness for Hardy. He testified that Cook sold and distributed tractors, graders and like type of machines to the construction industry and farmers, and had its main plant and offices in Chillicothe, with regional offices at Fulton, Sedalia and St. Joseph, Missouri. He stated that Cook operates its own hauling equipment to make initial delivery of machines sold and that sometimes machines that have been sold must be returned to one of Cook's locations for service and repairs. The witness stated that he did not believe Cook could legally perform such service with its equipment, but that it was up to the owners to get the machine transported back to Cook. He further stated that another employee, Jerry Gilliam, stationed at Chillicothe, was in charge of transportation for Cook and the witness normally does not have anything to do with that part of the business, although he thinks he has referred some customers to Smarr. He stated that he could see no objection to using Smarr, Oliver, Leeser, or Twehous in this service, although he personally knows of no request for service from these haulers and he has no knowledge of Cook ever using common carriers.

Dunivent stated, "I would say, it would" be of benefit to Cook and fill a need if Hardy had the authority it sought. Sometimes his customers experienced difficulty getting their machines in for repair and service and they would become "disturbed" that Cook could not supply that service. He was concerned about the needs of customers. It should be here noted that none of Cook's customers nor Jerry Gilliam, its manager of transportation, testified.

Dunivent stated he had made sales to Hardy and it was a good customer and he frankly stated that he was "speaking" as an accommodation to his customers.

Bill Warren testified as a witness for Hardy. He stated that he is a sales representative for the Altorfer Machinery Company of Hannibal, Missouri; that the company sells caterpillar construction machinery in 13 counties in northeast Missouri; that its customers are primarily construction companies; and, that the company operates a tractor and a three axle low-boy trailer which is used to make delivery of machines it has sold.

Warren stated that if Hardy's application is granted, his company could use Hardy to haul "somewhere in the neighborhood" or "probably in the neighborhood of 4 to 6 units a month of new" machinery. Later, he stated that this was a "fast judgment" and that he was "just guessing". The transportation for his company out of Han-

nibal was handled by another employee, Ray Beetle, who did not testify. Warren stated he did not know the dealings his company has had with common carriers except that in the last 12 months he has personally contacted Oliver on two occasions without satisfactory results; that he does not know whether his company ever requested service from Smarr or Twehous, although he has knowledge that Twehous has solicited his company for business recently; that Hardy is one of his customers; and, that he is interested in helping Hardy "in anyway possible" and that he, on his own, asked Hardy to file the application.

He stated that his company could use the Twehous service if it had proper authority, equipment and ability to furnish service at an acceptable rate. Warren was not familiar with Leeser.

The evidence presented before the P.S.C. by the protestants may be thus summarized:

L. F. Blackstun, traffic manager of Hannibal-Quincy Truck Lines, Inc., stated that his company had only a limited interest in the proceedings since it did not haul heavy contractors' machinery requiring special equipment. It did not join in the position for review and is not a party to this appeal.

Frank Twehous is president of the Twehous Excavating Company, Incorporated, of Jefferson City, Missouri. His company is engaged in the business of dirt moving and specialized heavy hauling, and has held P.S.C. certificates for such hauling in central and southeast Missouri for some time. His company has experience in such hauling since 1959, makes 30–45 such moves per month, and the witness' recollection is that this business, under the old permits, generated about $100,000.00 in revenue in 1973.[3] He identified a list of 16 pieces of equipment owned by his company used in such hauling, which he stated was in very good condition, and stated additional such equipment would be purchased if needed. At the present time, all this equipment is stationed in and operated out of Jefferson City.

Twehous stated that none of the shippers appearing in support of the Hardy application had ever contacted his company for service under the old permits, but his company would have served them within such authority.

Twehous acquired by purchase in February, 1973, an additional authority in northeast Missouri covering all of Stoddard, Knox and Lewis counties; practically all of Marion and Shelby counties; and, parts of Macon, Adair and Schuyler counties. Hardy's proposed authority would be in direct conflict with the Twehous authority. His company has recently solicited business in that area and the purchase of that authority was with the prospect of generating substantial revenues in that area but as of the date of hearing has received no revenue therefrom.

Twehous stated that his existing tariffs permitted "deadhead" charges per mile for empty operation in connection with hauls. He stated that if business warranted his company would station equipment at a terminal in northeast Missouri to minimize this charge, although he could not fix the time when this would be done.

Walter Smarr testified that his business was in Columbia, Missouri and that he had held P.S.C. heavy machinery hauling permits for twenty years. The area covered is the "trade territory contiguous" to Columbia, Missouri and to and from all points in Missouri and within a 25-mile radius of Belle, Missouri. He has nine pieces of equipment suitable for heavy hauling in good condition, representing an investment of about $50,000.00, with which he performs 4 to 10 hauls per week. While Smarr would not attempt to operate in the northeast counties under his Columbia, Missouri "contiguous trade territory" permit (except, it is assumed, if the shipment originated within the Columbia territory for delivery in the northeast counties) the Hardy application would directly conflict with his operation and damage his business. Hardy's request extends south of Columbia and almost to

---

3. The 1973 report of his company showed $67,000 plus in such revenues.

the river (Cole County).[4] He has done little or no hauling for the shippers supporting Hardy's application and has received no requests from them for service.

Thomas Johnson is Safety Director for John F. Oliver, based at Mexico, Missouri, and is engaged in hauling heavy machinery. Oliver's permit covers Audrain, Callaway, Montgomery, Warren, Lincoln, Pike, Ralls and Monroe counties and to and from all points in Missouri. He identified a list of equipment owned or leased by Oliver used in heavy hauling consisting of over 100 pieces. He stated that the base of Oliver's operation, Mexico, was 60 miles from Shelbyville and 47 miles from Hannibal; that Hardy (Shelbyville) was about the same distance from Hannibal; and, that his company had performed hauling service for Altorfer consisting of six hauls in the last six months, but, to his knowledge, had performed no service for any of the other shipper supporters of Hardy's application, although his company's service was available. Johnson stated that the authority sought by Hardy would be detrimental to Oliver.[5]

Leeser, intervenor opposing the application, offered no evidence, although it joined in the petition for review and is a party here.

■ The evidence offered by Hardy in support of its application (as above summarized) falls short of meeting its burden to establish by substantial and competent proof, a present need or necessity for or existence of public inconvenience because of a lack of such service "so great as to amount to a necessity". *State ex rel. Missouri, Kansas and Oklahoma Coach Lines, Inc. v. Public Service Commission,* 238 Mo. App. 317, 179 S.W.2d 132, 136[3–5] (1944). At best, such evidence is speculative, contingent, conclusionary, based, in part, on hearsay, and is without real substance. *State ex rel. Eldon Miller, Inc. v. Public Service Commission,* 471 S.W.2d 483, 488[2] (Mo.App.1971); *State ex rel. National Trail-*

*er Convoy, Inc. v. Public Service Commission,* 488 S.W.2d 942, 945, 948[3, 5] (Mo.App. 1972).

Having reached this conclusion, it is not necessary to again discuss the effect that the granting of this authority to Hardy would have upon the protestants. While the record is somewhat unclear as to the present operations of the protestants, it is clear that the Hardy authority overlaps all of the existing authority held by Leeser and Twehous and part of the authority of Smarr and Oliver, in the area involved; that the protestants (with the possible exception of Leeser) are equipped to furnish the service, with substantial investments in their business enterprises and are willing to afford service within the limits of their authorities.

In this area, Hardy also fails to meet the burden of proof placed upon it to show that the operations of the protestants would not be seriously affected by the grant of authority here given by the P.S.C.

For these reasons, the judgment is affirmed.

All concur.

---

4. The authority granted Hardy, in fact, overlaps Smarr's in Randolph and Monroe counties.

5. The authority granted Hardy overlaps that of Oliver in all of Monroe County.