STATE of Missouri ex rel. CITY OF OAK GROVE, Missouri, City of Independence, Missouri, City of Sibley, Missouri, County of Jackson, Missouri and The 249 Phone Committee, Appellants,

v.

The PUBLIC SERVICE COMMISSION, OF the STATE OF MISSOURI, Respondent,

and

United Telephone Company of Missouri and Southwestern Bell Telephone Company, Intervenors–Respondents.

No. WD 40592.

Missouri Court of Appeals, Western District.

March 14, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

Jeremiah D. Finnegan, Kansas City, for appellants.

Douglas C. Walther, Jefferson City, for Missouri Public Service.

Ann Mesle, Kansas City, for Southwestern Bell.

David K. Knowles, Overland Park, Kan., for United Telephone.

Before NUGENT, P.J., and SHANGLER and CLARK, JJ.

CLARK, Judge.

Appellants, representing residential and commercial telephone customers in all or portions of the Jackson County municipalities of Buckner, Independence, Sibley and Lone Jack,[1] petitioned respondent Public Service Commission for an order requiring respondent United Telephone Company to establish telephone Extended Area Service (EAS) between certain United Telephone exchanges and exchanges in the Kansas City metropolitan area served by respondent Southwestern Bell Telephone Company. The PSC issued its report and order dismissing the complaint. The circuit court on review of the order affirmed. This appeal followed.

By its order, the PSC found that United and Bell had not discriminated against appellants by refusing to supply EAS telephone service to United's Oak Grove, Buckner and Lone Jack exchanges. The principal issue on appeal is whether that finding was unreasonable, as appellants contend, because it was not supported by competent and substantial evidence on the whole record.

Some description of the manner in which telephone service is provided in Kansas City and its general environs will aid in understanding the origin of appellant's complaint.

Both United and Bell operate under a system of local telephone exchanges. A customer may place calls to any other telephone within the customer's same exchange without charge, except for the monthly service bill. Calls to other telephone exchanges, however, incur a toll unless several exchanges have been combined for the purpose of providing area service. The latter term indicates a system whereby the monthly telephone charge is set for a zone which permits customers to call all exchanges within the zone and not be separately billed a toll for individual calls.

In the Kansas City central area served by Bell, an area service plan, known as Wide Area Service (WAS), enables most telephone subscribers to call any other exchange in the area without incurring a toll charge. The monthly telephone charge depends on where the telephone subscriber's exchange is located in the area. Bell also offers certain Kansas City subscribers EAS telephone service on an optional basis. WAS telephone service is not optional.

EAS telephone service, also offered to some customers of United, is in effect a substitute for toll charges to customers with telephones in exchanges outside the central metropolitan area. In return for a substantial added monthly charge, telephone customers in an exchange area where tolls would otherwise apply to calls made to other exchanges may make such calls toll free. In the same manner, telephone subscribers may call the EAS customer without incurring a charge. EAS telephone service is generally offered as an option in contrast with the Bell WAS which is not.

---

1. The United Telephone exchanges at issue in this case are known as the Oak Grove, Buckner and Lone Jack exchanges. The exchange boundaries do not necessarily coincide with municipal boundaries.

Bell offers optional EAS telephone service to telephone subscribers in Greenwood, Smithville and Grain Valley in Missouri and Basehor in Kansas because those exchanges, although adjacent to Kansas City, are not sufficiently near to be included in the WAS zone. United offers optional EAS to its customers in Lake Lotawana and non-optional EAS to Ferrelview subscribers. In the case of Lake Lotawana, for example, the cost of EAS to residential customers is $39.35 a month and $49.20 a month for businesses.

United customers in the Oak Grove, Buckner and Lone Jack exchange areas are not offered EAS either on an optional or mandatory basis. Each call made from any of those exchanges to another exchange [2] is separately surcharged in an amount depending on the exchange called and the length of the conversation. The same charge is made for incoming calls to these exchanges from telephones in the Kansas City metropolitan area. Thus, for example, a call placed by a customer having a telephone in the Bell WAS area to a telephone in Oak Grove will result in a toll charge to the Bell customer who places the call.

Appellants contended before the PSC that United's denial to them of optional EAS was in contravention of § 392.200.2 and .3, RSMo Supp.1988. They claimed discrimination, first, because appellants were thereby subjected to undue or unreasonable prejudice or disadvantage as compared to other telephone customers in nearby telephone exchange areas. Second, appellants claimed the toll charges assessed for their service were substantially higher than the charge for EAS service where that service was available in nearby exchanges, thereby demonstrating rate discrimination.

The first point of error raised by appellants contends the PSC order, although lawful, was unreasonable in that it was not supported by competent and substantial evidence. Appellants say the overwhelming weight of the evidence showed undue discrimination by United against appellants in the refusal to supply EAS service to the Oak Grove, Buckner and Lone Jack exchanges. If that be so, according to appellants, the order based on a finding there was no discrimination was unreasonable and must be reversed.

The role of the court in reviewing a decision by the PSC is to determine whether the commission order is lawful and reasonable. *State ex rel. Utility Consumers Council of Missouri, Inc. v. Public Service Comm'n*, 585 S.W.2d 41, 47 (Mo. banc 1979). A decision is reasonable if it is supported by competent and substantial evidence on the record as a whole and not against the overwhelming weight of the evidence. *State ex rel. Fee Fee Trunk Sewer, Inc. v. Public Service Comm'n*, 550 S.W.2d 945, 946 (Mo.App.1977). There is a strong presumption in favor of conclusions reached by an experienced administrative tribunal. *State ex rel. City of West Plains v. Public Service Comm'n*, 310 S.W.2d 925, 933 (Mo. banc 1958). The burden is on the party seeking to set aside an order of the PSC to show that the order is unlawful or unreasonable. Section 386.430, RSMo 1986. As to matters of reasonableness, the court may not substitute its judgment for that of the commission if the commission order is supported by competent and substantial evidence. *State ex rel. National Trailer Convoy, Inc. v. Public Service Comm'n*, 488 S.W.2d 942, 944 (Mo.App. 1972).

The case appellants undertook to make before the commission rested almost entirely upon a comparison of the Oak Grove, Buckner and Lone Jack exchange areas with the Lake Lotawana exchange. All are served by United, all lie in eastern Jackson County, all partake of suburban characteristics, but only Lake Lotawana is provided EAS telephone service. Appellants say their proof showed disadvantage and prejudice to them in the fact that the similarly situated areas are not provided comparable

---

**2.** A number of variants exist in the basis for interexchange call rates. In some cases, no toll is charged for calls to adjacent exchanges, and in some exchanges, even EAS does not provide area wide toll free calling. These differences are not relevant to the broad issue considered here.

telephone service and that the discrimination violates § 392.200.3, RSMo Supp.1988.

The evidence appellants offered to support the claim of discrimination and prejudice was in the form of testimony from numerous witnesses who reported the burdens of calling municipal and other government offices, utility companies, schools, places of business and family and friends in other parts of the metropolitan Kansas City area, all or most of which were located outside the appellants' telephone exchange area. Such calls could be made or received only by incurring toll charges. The appellants asserted that the toll charges and the unavailability of EAS telephone service discriminated against them because the result was to discourage those who might otherwise do so from calling appellants and to make it more burdensome on appellants to contact services by telephone.

Appellants' evidence, alleged to have proved discriminatory treatment by United, compared the relative distances between Bell's primary serving office in the central zone of Kansas City and the Lake Lotawana exchange with a like measurement to each of appellants' exchanges. That distance, measured by vertical-horizontal air miles, is 21 miles in the case of Lake Lotawana, the same for the Buckner exchange, twenty-five miles for Oak Grove and twenty-eight miles for Lone Jack. Appellants rely substantially, if not exclusively, on this aspect of geographic comparability to make their claim for treatment on a basis of equality with Lake Lotawana. Conversely, it would appear that if territorial alignment is the controlling criteria, then the availability of EAS to Lake Lotawana makes a case of discrimination against appellants.

None of the parties has cited a case in point on the issue of discriminatory restrictions by a public utility providing telephone service. We are therefore guided in our review by the general principles announced in the cases previously cited. If there is in the record competent and substantial evidence to support the commission's decision, it must stand because the decision is thereby, by definition, reasonable. *State ex rel. Fee Fee Trunk Sewer*, 550 S.W.2d at 946.

It is not the commission's burden to support its decision, but the burden of appellants to demonstrate that the decision is unreasonable. Section 386.430, RSMo 1986. A strong presumption favors the conclusions reached by the commission because of their expertise. *State ex rel. City of West Plains*, 310 S.W.2d at 933. A reviewing court is not to substitute its judgment for that of the commission. *State ex rel. National Trailer*, 488 S.W.2d at 944.

■ On the subject of the character of the telephone service appellants receive, their argument is that inter-exchange toll calling is an inferior class of service to the EAS which they desire and which Lake Lotawana subscribers have. If the Lake Lotawana exchange area is indeed similarly situated for purposes of telephone service to the Buckner, Oak Grove and Lone Jack exchanges as demonstrated by the overwhelming weight of the competent and substantial evidence, then the commission decision was in error. Because appellants had the burden of proof, the question is whether their evidence persuasively proved the similarity between their suburban areas and that of Lake Lotawana. The unavoidable conclusion is that it did not.

The only evidence of similarity which appellants produced was that of vertical-horizontal airline miles mentioned above. Even that evidence, however, is of dubious value when account is taken of the size of the Buckner, Oak Grove and Lone Jack areas in question. The Lake Lotawana exchange, as indicated by exhibit 30 presented to the commission, covers a comparatively small area whereas the Buckner, Oak Grove and Lone Jack rural exchanges include areas in each exchange at least three times larger. If the measurements be made from the Bell central serving office to the outermost limits of appellants' exchanges rather than to the telephone exchange facility, the distances increase in the case of Buckner by five miles, Oak Grove by three or four miles and Lone Jack by five or six miles. Unlike the Lake Lotawana exchange, the Buckner, Oak Grove and Lone Jack exchange areas extend be-

yond the Jackson County line into some predominately rural, sparsely settled territory.

Relying entirely on the vertical-horizontal mileage for proof of similarity, appellants failed to produce any evidence comparing the Buckner, Oak Grove and Lone Jack exchanges with the Lake Lotawana exchange in terms of population density, number or type of customers or telephone calling patterns. Based on geographic dissimilarities and the absence of proof of other facts tending to show similarity to the Lake Lotawana exchange, the commission found that appellants' exchanges are not similarly situated to Lake Lotawana. Appellants contend the finding was in error because the vertical-horizontal mileage was controlling and other factors should have been ignored. No case authority for this proposition is cited.

We reject the contention that discrimination in telephone service may be proved merely by evidence showing the distance between a central exchange and a service complainant's exchange is approximately the same as that to another exchange which has a different quality of service. The commission is entitled to take into account in discharging its regulatory function other factors, such as population density and gross territory area, which are significant in making comparisons for similarity or dissimilarity. In this case, the absence of any proof by appellants on features of similarity other than vertical-horizontal miles and the evidence which showed the rural character of substantial portions of the Oak Grove, Buckner and Lone Jack exchange areas were sufficient to support a finding that appellants made no case of discrimination by comparison to telephone service to the Lake Lotawana exchange.

Appellants explicitly point out that they make no claim of a preference given Lake Lotawana customers, although such would necessarily be the result if appellants' claim as disadvantaged neighbors be accepted. Their contention is, instead, that if the boundary for EAS telephone service be extended, as it is, to include Lake Lotawana, it should also be expanded to include Oak Grove, Buckner and Lone Jack. This is, again, advanced as a theory based on comparable vertical-horizontal miles measured from the central exchange.

The fallacy in this argument lies in the fact that economic and other practical considerations require that some telephone customers on the fringes of the central metropolitan area not be included in the toll-free calling zones, either WAS or EAS. The areas of Oak Grove, Buckner and Lone Jack do not constitute the only suburban districts which do not have EAS. Toll charges also apply to customers in the Cleveland, Peculiar, Kearney and Farley exchanges as well. The line where EAS ends and toll calls begin must be drawn somewhere and those just beyond the line will always be in a position to field a complaint that the line should extend one exchange farther.

We adopt the rationale of the commission's decision in *Gerwitz v. Southwestern Bell Telephone Co.*, 19 Mo. P.S.C. (N.S.) 345 (1974). In *Gerwitz*, telephone subscribers in the St. Charles and Harvester areas to the west of St. Louis sought improved telephone service to St. Louis and claimed a failure to grant that service amounted to discrimination. The commission denied the claim pointing out that exchange boundary lines must be drawn somewhere and when they are, those outside the line will always have grounds to claim they should have been included. If such a concept were to be recognized as a basis to claim discrimination, each delineation of a boundary line would simply be met by new claims for inclusion and unlimited expansion would be the result. It is for this reason that comparability of vertical-horizontal mileage is not alone sufficient to show similarity in cases of alleged discrimination.

The exchange boundaries for telephone services in the Kansas City metropolitan area, as shown on Exhibit 30 before the commission in this case, are irregular and are affected by municipal boundaries, population density and other factors. Exchange lines are not established by drawing concentric circles emanating from the central exchange office. Thus, it is inevitable that

some exchanges will have different types of service with an exchange or exchanges more remotely located from the central office having a preferred grade of service as contrasted with an exchange area situated at a lesser distance. These circumstances further demonstrate that comparable distances alone cannot be relied on as proof of discrimination.

As to appellants' first point, the contention that the commission decision was unreasonable because the overwhelming weight of the evidence showed undue discrimination in a failure to supply appellants with EAS telephone service, we find to the contrary. The overwhelming weight of the evidence does not support appellants' claim. The commission decision was based on competent and substantial evidence, as discussed above, and is entitled to affirmance.

■ The second point appellants make relies on § 392.200.2, RSMo Supp.1988 and argues that appellants are the victims of rate discrimination. As we perceive the argument, they contend the basis on which tolls and EAS charges are made is not affected by the dissimilarities in size and configuration of their exchanges as compared with the Lake Lotawana exchange and thus the cost of service to the Oak Grove, Buckner and Lone Jack exchanges is the same. On that premise, they argue that charging tolls to appellants while serving customers in the Lake Lotawana exchange by toll-free EAS amounts to charging appellants more for the same service.

The first problem with this contention lies in the absence of proof that toll service to appellants yields a higher rate than would EAS. There was no proof of what the cost of EAS service would be to appellants, if it were available, nor does it appear whether it would be mandatory, as is the case in Bell's WAS, or optional. Appellants also presented no reliable comparative data as to the cost of appellants' present toll service. The amount of tolls depends, of course, on the calling patterns of residents and businesses in the exchanges serving appellants and would necessarily vary among customers. It is not enough to prove toll rates merely by show-

ing that a sufficient number of toll charged calls would ultimately aggregate more than similar calls on a flat rate. The claim that toll service is more expensive to the customer is, on this record, a matter of speculation.

More importantly, however, in respect to the claim of rate discrimination, there is no basis for the contention that the Lake Lotawana EAS telephone service and the toll charged service to the exchanges serving appellants are the same or comparable. The dissimilarity in service is the very ground on which United and Bell have resisted appellants' demands for an upgrade in service.

Appellants' rate discrimination claim is merely a reargument of their first point that because their exchange areas are comparable to Lake Lotawana, they should receive the same type of service. It also follows that if the areas are not comparable, there is no discrimination against appellants when EAS is not made available. By the same line of reasoning, dissimilar telephone exchanges may warrant different subscription rates depending on the cost of supplying service.

In their presentation, appellants relied entirely, as was noted above, on a comparison of their exchanges to the Lake Lotawana exchange based on vertical-horizontal miles. Appellants assume the cost of telephone service is an inflexible derivative of vertical-horizontal miles, but there was no proof that such is true. We are cited to no authority which so holds.

The earlier discussion in this opinion concluded that appellants failed to prove comparability between their exchange areas and the Lake Lotawana exchange. If the exchanges are not comparable, then that dissimilarity provides a basis for a different rate structure. Whether the present toll rates are fair and reasonable for the present type of service to the Buckner, Oak Grove and Lone Jack exchanges is not a subject of appellants' complaint. If that is a source of dissatisfaction, which we do not understand it to be, the subject is beyond the scope of this case.

In summary, appellants made no case of rate discrimination because they did not prove that there is a disparity between the rates in comparable exchanges. The point is denied.

 In a final point, appellants claim the commission failed to consider their petition for EAS on the basis of public need. The only authority cited under the point is § 392.200.1, RSMo Supp.1988 which requires telecommunications companies to provide adequate facilities and instrumentalities. They say there was abundant proof that the customers in the Oak Grove, Buckner and Lone Jack exchanges desired and needed EAS.

There was no proof offered that appellants' telephone service did not permit appellants to reach any other telephone exchange when calls were placed or that incoming calls to appellants' exchanges met with any equipment obstructions. The sole basis for appellants' complaint was the cost of service, not the adequacy of equipment. We are unaware of any case authority, and appellants cite none, indicating that § 392.200.1, RSMo Supp.1988 dealing with adequacies of facilities and instrumentalities encompasses a claim for less expensive telephone service, that is, the elimination of inter-exchange tolls. The commission properly denied the claim.[3]

The judgment is affirmed.

All concur.

---

**3.** In a related case reported at 29 Mo. P.S.C. (N.S.) 75 (1987), the commission ordered experimental service to a number of expanding areas including Oak Grove, Buckner and Lone Jack. That service, although not the same as EAS, was intended to meet the telephone needs for customers in formerly rural areas near a metropolitan area but in a process of transition.